This morning will be Aguilar v. Management & Training, 17-2198, and we'll hear from Mr. Mobs. May it please the Court, good morning. My name is John Mobs. I represent about 120 current or former detention officers employed to provide security by Management & Training Corporation, or MTC, at a prison in southern New Mexico. The officers brought this action under the Fair Labor Standards Act because they are not being compensated for time that they spend performing a variety of activities before the time they arrive at and after the time they leave their assigned duty shift for the day, even though those tasks are either their principal work activities or tasks that are integral and indispensable to their principal work activities. I think the basic legal framework is pretty well settled. Under the FLSA, employers are required to pay overtime compensation to employees who work more than 40 hours a week. Employee is defined to include to suffer or to permit to work, but work is not defined by the statute. The Supreme Court defined it broadly in early days as any physical or mental exertion controlled by or required by the employer. We've got this Portal to Portal Act now that says that getting to your place of work doesn't count, so this final briefing certainly would be covered as the district court found, but why aren't all these other things kind of taken off the table by the Portal to Portal Act? Well, the Portal to Portal Act eliminates compensation for walking and travel time and preliminary and post-preliminary activities that are before the commencement of or after the cessation of an employee's principal work activities for the day. Activities that are principal work activities still must be compensated and activities that are integral and indispensable to an employee's principal work activities are defined as being part of their principal work activities. So, the tasks at issue in this case, although they may have happened before the duty assignment or after the duty assignment, were principal work activities in and of themselves, or again, activities integral and indispensable to those activities. They have to be more than de minimis also? They have to be more than de minimis. I think that the de minimis test is not as simple as saying, well, it's just a few minutes. I mean, when activities are required regularly, like they are in this case, the de minimis standard does not preclude compensation for that time. But there is no easy test for whether activities are principal work activities or whether they are integral and indispensable activities. Instead, the courts decide these cases on a case-by-case basis, on a case-specific basis, to decide whether the tasks at issue are really the productive work that the employees were hired to perform or tasks that are closely connected with and indispensable to the performance of that productive work. Well, I mean, I suppose you could say on indispensability that indispensability includes opening the front door to come in from the parking lot, because if you don't do that, you're not going to get to do anything that's downstream of that, and we know that interpretation wouldn't be valid. Right. You're correct, Your Honor. It's not enough to say that a task is necessary. We can't use a but-for test, if anything. Correct. That's correct. The activity must also be closely connected with the work that the employee is required to perform, as well as being indispensable to that task. So I'd like to start with the activity of the officer's activities during the time when they walk from the central control office to their duty station where they receive this pass-down briefing, because I think that helps highlight the officer's principal work activities. And just to be clear, although I think there's been some reframing of the argument by the appellee and even by the district court, the officers aren't saying that this time is compensable, because it's very burdensome to drag their equipment or their keys from one place to another. The officer's contention is that during this time, they're performing their principal duty of providing security, and that makes it a principal work activity. More specifically, their job description lists as essential functions to provide custody and security of detainees, including observation of detainees. And the evidence is that during this time, when they're walking from one place to another, the officers are in the presence of inmates. They're required to be active, alert, and engaged and ready to respond. And even they can be disciplined if they're not being security-minded. So you're arguing now only with regard to the walk time? Correct. Okay. Can I ask you a hypothetical question? Sure. Let's say we have a security guard who's an off-duty police officer. And this off-duty police officer sees the potential for a crime being committed, or it's a totally uneventful day. Now, would that officer's time off-duty as a private security guard, would that be compensable time under the FLSA? If the officer, if I understand your hypothetical correctly, we're talking about a police officer who may have to intervene to prevent a crime while he's not working. Yeah, but he's off the clock. He's just spending time as a private security guard. Yes. And he, or she, is presumably trained to be observant. And if they see a crime, potentially a crime being committed, I would assume that they might have some duties that I might not have as a private citizen to intervene. But is that, is the time as a private security guard off the clock with regard to the municipality, is that compensable time under the FLSA? That is not compensable time while he's off the clock for the municipality. In other words, the municipality does not have to compensate him for his off-the-clock time, even though he might be called to duty. Now, why would that be different than these detention officers walking from after they clock in to their post, who are presumably trained to be observant with regard to things that are on the prison yard, much like an off-duty police officer, why would that prison detention officer's time spent walking to the post, why would that be work that's compensable under the FLSA and not the off-duty security guard? Well, there are two reasons. One is, unlike the police officer in the hypothetical, his security officers here are in their employer's workplace alert and vigilant for the types of tasks that they're required to be alert and vigilant to as part of their workday. Secondly, as one of the officers testified, we are on-duty guarding inmates during that time. So unlike the police officer in the hypothetical, who's off work and free to go about his business unless something happens, a crime erupts, these police officers are actually at work doing their essential job duties. The hypothetical I like to use is a firefighter. I mean, you may have a firefighter at a fire station doing crossword puzzles, you know, watching television. Hopefully nothing ever happens and he's never called to duty, but he's still at work on duty during that period of time. He's engaged to wait is the term used in the FLSA context. And these officers are engaged to be on duty providing security during this walking time. Or at least a reasonable trier of fact could conclude from the evidence. So you would distinguish that from a cafeteria worker who isn't on duty until he or she gets to the cafeteria line because that walking gets them to their station, but during the walk they have no duties at all. Presumably the cafeteria worker would not be on duty, would not be on guard, would not be providing security during the walk between the control office and the cafeteria. These officers were, or a reasonable trier of fact could conclude that they were on-duty guarding inmates. If they encounter during that walk, they actually do encounter some situation that requires them to actually essentially work, there's a form they can fill out and declare or claim that time, right? That's correct. How does that impact your analysis? Well, it doesn't really. I mean, again, it's like the firefighter. The firefighter's not just working when he's responding to a fire. He's responding, he's at work when he's waiting for the fire to erupt. And these guys are guarding the inmates when they're walking to their station. So you're saying it doesn't make any difference whether there's an incident that requires them to do anything, they're working just as they walk because they might have to respond. That's correct. And they're required to be ready to. Yes. They're on duty. Yes. Let's go before the walk, where they go through the metal detector, when they pick up their keys, when they pick up their equipment. There are cases out there that say that getting outfitted like that is not essential duties. It depends on the specifics of the case. So if you're wearing a hard hat or maybe earplugs, kind of common workplace garb, the donning of that type of garb is not usually compensated. It's not. But if you have specialized equipment like the officers do in this case, you know. I mean, I think a hard hat has got as much claim to be specialized as a baton. Well, I think a set of keys that operates a specific doorway is about as specialized as you can get. I think handcuffs that these officers are required to carry aren't used in very many professions. I think that is very specialized. Pepper spray is very specialized. We're going to hate to have our cases turn on whether handcuffs are specialized but a hard hat isn't. You know, unfortunately. Those are very nuanced. But why isn't all of this solved by the fact that you were compensated basically by when you punched into the time clock? They gave you a ten minute opportunity to get to the job. And they said, look, that, on the whole, we can concede that all of this other is on-duty work. And the punch clock is kind of the beginning of the racetrack almost, and that covers everything. Why doesn't that pretty much gut your case? There are two parts to that, Judge. First of all, the officers are not compensated for their on-the-clock time. They're compensated for the eight-hour duty shift that they're assigned to the post. If they come in ten minutes early, they're not compensated for that ten minutes. I thought that if the clock time was punched in at whenever the beginning time was, eight in the morning, is it? Eight in the morning. And they clearly aren't going to get to the transition time until 8.10. So they will – I suppose they might get into trouble because the guy who wants to get off isn't going to be able to get off until 8.10. So you're saying they have to come in ten minutes early, but they get that ten-minute allowance, right? No, Your Honor, they don't get that ten-minute allowance. They get compensated for eight hours, period. And they're required to be at their duty station for eight hours. In a 24-hour period, MTC pays for 24 hours of work, three guys working three shifts. You know, there are some shifts where there aren't three shifts. There are some stations where there aren't three shifts. But basically it pays for 24 hours of work in a 24-hour period. But there's an overlap between the officers because one guy is coming in, going through security, getting his keys, getting his instructions, going to the station, and getting his pre-shift briefing, while the other guy is still at the station. They're compensated only for the eight hours that they're required to be at the duty station. They are not compensated for the earlier time. Why are they even required to punch in to the clock then? That's a great question. Everyone agrees that the clock does not measure the officer's actual working time. We believe working time begins even before punch-in when the officer's got security. Why do you even have a clock? The answer is I don't know, and it doesn't make sense in this case. No, you do get paid. Unless I'm not understanding correctly, there is some mechanism for paying them for more time if they clock in more than ten minutes before or more than ten minutes after. That's correct. So then they do get paid. They do get paid if they go more than ten minutes over. That's correct. More than ten minutes over, either at the beginning or at the end. Not total. Either or. It's got to be either or, right. Either or, either end. But if they clock in nine minutes early and they clock out nine minutes late, they're paid for eight hours. Right. But the point is... They would really need to clock in some amount of minutes early in order to get to their station by the appointed transition time. That's correct, and that's the problem. They're not being paid for that time. I mean, a reasonable trier of fact could find that these duties the officers are performing along the way are not just preliminary tasks that are not integral and indispensable to their work duties. A reasonable trier of fact could conclude that the officers are performing their duties during this walk period when they're alert or performing integral and essential tasks to the performance of their principal work duties during this time, and therefore the summary judgment should be reversed. Are there any other questions? Thank you. I'll give up my last seven seconds. You what? I'll give up my last seven seconds. Oh, I was going to give it to you. Thank you. Mr. McBillie. May it please the Court, my name is Aaron Vietz. I represent Management and Training Corporation. Let me begin with the time clock. So under the facts as this case unfolded, there was a time adjustment window, as MTC calls it, so that if you clock in within 10 minutes either side of your scheduled shift start or end, you're paid from shift start. Why 10 minutes? Well, it's a rough approximation of the time it takes to get from the time clock out to the post. But if you clocked in 10 minutes after your shift began, this isn't. Yeah, 10 minutes before and 10 minutes after sounds all fair and nice and equal, the teeter-totter is balanced. But you clock in 10 minutes early, you get to where you're supposed to be on time, and you keep your job. You clock in 10 minutes after you're supposed to get there, you make the transition 15 minutes afterwards, and you get fired. So it's not. I mean, even though it's got a syllogism that sounds equal, it isn't equal. They have to be at the transition point at the anointed 8 o'clock time, don't they? That's correct. And to do that, they have to clock in, on average, significantly ahead of the 8 o'clock time. Now, if they clock in more than 10 minutes early, they'll get compensated, but presumably this whole process takes less than 10 minutes. So the syllogism that, yeah, there's two 10 minutes before and after balances out, it just doesn't seem that it balances out at all. I mean, we know that they're going to – if the walking is essential duty, then there is no doubt that they're not being paid for that time. Isn't that correct? That's correct. And so although walking is often not viewed as essential duty, it might be in this case because of their – that they're carrying a gun. They've got a loaded weapon on their hip. They've got the baton. They've got the star. And they have got a duty to be alert and vigilant for whatever they see. Right. Let me address that as well then. There seems to be, well, a difference of opinion, to be sure. Well, if there's a difference of opinion, to be sure, then you lose, to be sure, because this was summary judgment. Well, let me – Differences of opinion go to trial. Well, disputes of fact do. Let me explain the evidence as it was presented in the district court, and that is this. If an officer drives into the parking lot and sees an inmate escaping out of the facility, yes, NTC expects the officer to react, behave appropriately, try to apprehend the inmate. If that happens, we'll pay them. But that doesn't mean that because the officer has arrived at the parking lot and doesn't happen to see an inmate on a given day that that's compensable time. And the same sort of analysis holds true all the way up to post. There wasn't any evidence in the case of a situation where an officer had to engage an inmate before he or she got to post and wasn't paid. In fact, you know, there was – it's a dispute. But the question isn't whether they engaged in it any more than the question is whether a firefighter is in fact having to fight a fire. The question is, are they on duty doing their work to be available to fight an inmate? I mean, 90 percent of the time, these officers will go through the entire shift and not have to engage an inmate, depending on what their assignment is, of course. Well, corrections officers, I think, are engaging inmates for the majority of their on-post time. But I think the analogy to the firefighter cases or the cases where an employee is engaged to wait as opposed to actively working doesn't hold true in this context. Well, if you're talking about wait time, I don't know what that has to do with the question that Judge Abell is asking you about. With regard to what your opposing counsel started with, with regard to the walk time from the clocking in to the post, I hear you to say, well, we can see – in fact, we affirmatively state that during that walk, these detention officers are obligated as part of their job assignment to be attentive, to look for inmates, and to engage inmates if they see something that is improper. So I think – Yeah, let me clarify that, because that's not our position. Insofar as now they're on duty as soon as they're on prison property. No, that's not correct. These officers, until they get on post, they're free to go get a cup of coffee in the commissary. They can get a candy bar. They're not on duty until they actually relieve the oncoming officer. You know, I don't think it's any more complicated than that, and I don't mean to suggest otherwise. And so what we're left with is simply walking, traveling to the place of performance, and that's a portal-to-portal act question, and it's been answered squarely. What if during the walk time the detention officer sees two inmates fighting? Would that officer be free to just say to himself or herself, I've got to work. It's not my problem. I'm just going to mind my own business and walk to post. Would that detention officer be subject to discipline? Perhaps. I can say that officer wouldn't be paid, though. He wouldn't be working. I'm sure he wouldn't. And that's the only question before the court today. Discipline is another matter. I say discipline only as the other side of the coin of what is that detention officer's job responsibilities. What is he or she obligated by MTC to be doing? And if you're saying, well, we might very well discipline that detention officer because that detention officer is not doing what we are obligating that detention officer to do, and that is to be intent and to engage with regard to improprieties, I have trouble seeing the difference between a firefighter who might not be experiencing a fire, but by gosh, if there is a fire, they better get to it. If that was right, then we would require all off-duty firefighters to jump over the fence when they're barbecuing hamburgers, let their time off, and they see a fire in their neighbor's yard. I mean, I think that's stretching it too far. Well, I think your opposing counsel would say, well, that's the difference between being obligated to be on-premises and off-premises. If you're on-premises, on the prison yard, I think that's quite a bit different than me being a firefighter and, you know, smelling smoke in my neighbor's yard. Then I guess the question is, well, what is the premises? Yes, as soon as one plaintiff said, as soon as I drive into the parking lot, I should be paid. Okay, why? Because I'm on the premises. Well, we know that's not correct. But the issue is, what's preliminary and post-preliminary? So they're on the premises, but they're not actually working until they get to their posts. So while they're walking in between, if something happens, if it doesn't, under certain circumstances, yes, there may be a duty to compensate those officers. But otherwise, they're free to go about their business. Their only task is to be sure they're on post by shift start. To me, that's the problem of having this case resolved on summary judgment. We're just speculating. Think of all the hypotheticals we've asked back and forth in the last ten minutes. What if this happens? What if that happens? Would they get paid? Wouldn't they get paid? Aren't these questions of what their job assignments are that might need to be fleshed out in facts? No. And the reason why is the evidence presented to the district court, to this court as well, is 100 percent, at least when it comes to what happens day in and day out on the way to and from post, all of it was from the testimony of the plaintiffs themselves. So did both sides seek summary judgment in this case? Frankly, I'm a little surprised the plaintiffs didn't move, but they did not. They did not? No. Okay, so only you saw summary judgment. If both sides saw it, then we treat that as an admission that both sides are satisfied the record is as good as it's going to get. But that's not the case here. I just want to emphasize that I'm well aware of the standard on summary judgment to view the evidence in a light most favorable to the non-movements. And that's what we did. So there's no issue of fact as far as that goes. Let me ask you about the pre-shift briefing. So when the officer, say I'm a detention officer, I clock in, I meet my supervisor, and he gives me the count sheet. Okay? And that would be true for some of the officers, correct? Correct. Okay. And so I, my back rack, detention officer, am now going to be obligated to count the inmates that I'm supervising, right? When you get to post. When I get to post. How can I do that count without that count sheet? Can I? I see the issue. And I think the answer is no. But the question is, is being handed that sheet of paper, one, two, some officers put it as high as I think 30 or 40 sheets. Even if it's that much paper, does that trigger the start of the work day? Why wouldn't it? Why isn't it integral and essential to me conducting the principal activity of counting the inmates? A couple of. It's like in Perez where the second circuit said, you can't be a park ranger without getting all of this equipment. I don't know. And you already acknowledged that you can't count inmates without a count sheet. Just because something is necessary or required to do the work doesn't mean it's compensable. And there's. What else would you need? It has to be integral and indispensable. OK. How is it not integral and indispensable to count inmates? Why isn't a count sheet indispensable and integral to counting inmates? There's a line that seems to be drawn in the case law, including decisions from this circuit, with regard to the item that we're talking about being handed a sheet of paper and then toting it to the place of performance. So the line seems to be the more exertion that's required, the more effort that goes into taking the item and carrying it, the more likely it is to be compensable. If you're talking about Judge Sotomayor's opinion, I'm not talking about that. I'm not talking about the burden of carrying paper to the post. I'm talking about that discrete task of meeting your supervisor to get the count sheet. Or if you've got the keys to the cell, of getting the keys to the cell. Now, obviously, it's not going to take you that much longer to carry keys or pieces of paper. I'm not suggesting that. I'm just suggesting that that might very well trigger the start of the continuous workday of getting keys if your job is to lock and unlock cells or to count inmates to get the piece of paper that tells you who's supposed to be in the cells. The case that comes to mind immediately when you give that example is this court's decision in Castaneda v. JBS, the meat packers case. The holding, one holding of that case is that the meat cutters who had to take their knives and hooks to the place of performance weren't engaging in compensable activity when they collected those items and took them to the workplace. I don't think the analogy is really that different. Absolutely, those guys, gals, needed their knives and hooks to do their work. Similar, I mean, I would say even more necessary than count sheets. What was the rationale in Castaneda? I think that case, again, turned on this concept of how burdensome is it? What are we talking about here? Are we loading a truck full of heavy equipment and taking that out to the worksite where that might be compensable? Or is it something more simple? I understand you're advocating for that line, but I struggle to see that line in any of our cases where we really specify that, gee, if it's a piece of paper or if it's a key or if it's some small equipment, say a pair of handcuffs, that somehow that makes it not integral or indispensable. I didn't see that line, and I guess I'm struggling to see where you came up with it. If it applies, I see why you'd want to advocate for it. I recall that in JBS, the court relied on, I believe it was the Singh case. It was then Judge Sotomayor's decision, and I think that what was at issue in that case was a briefcase, carrying papers in a briefcase, not compensable. I think that would be analogous to a count sheet, for example. What about the screening process? I understand that in some cases, like BUSK, that's not compensable. But here, I mean, the BUSK case involved the Amazon employees who were screened post-work, right? Correct. To make sure they hadn't taken anything, essentially. But isn't this different here, where part of their job is to detect contraband and to find it, get rid of it, make sure the prisoners don't have access to it, right? So here, if they unintentionally or intentionally, if the employees bring in contraband, why isn't that integral to their jobs, that screening gets done so it doesn't happen? Because they can still do their jobs without it. Would the prison be less safe? Yes, but that's not the test. Isn't the standard whether it substantially impacts? And wouldn't that, if none of these employees or officers are screened and they're bringing in, maybe unintentionally, phones or contraband of some kind, something that's not supposed to be there, a pocket knife, I don't know, why wouldn't that substantially impact the job that they do, which is to rid the prison of contraband? Because that's not the test. Well, what exactly is it? It certainly would impact it, wouldn't it? It would. Unlike the employees in the BUS case who, you know, they're leaving and it doesn't impact their work to be screened to make sure they haven't taken anything. Well, BUS did use the example of a safety-related search, and that's, of course, what's happening at the prison. And I think the Supreme Court even said there's no distinction between the two types, one designed to root out theft or prevent it versus safety-related theft. Well, I get that, but when we're talking about a prison, I think it's a little bit different. And that's part of the job of these officers is to root out contraband and to make sure none of it comes into the facility. That's a little different than a screening at any other facility. I don't think there's any dispute that the officer who operates the metal detector has to be paid, and that's what you're suggesting, I think. No, I'm suggesting that the officers who go through the screening, their job, if no officer goes through a screening, I guess to me that screening process is integral to their jobs because their job's involved on the other side of the screening making sure no contraband has come in. It's integral and indispensable. So I guess the question is, can we ask ourselves, can we dispense of going through the metal detector and still have the job done? And the answer is yes. Would the prison be less safe? Yes. Yeah. So why is that indispensable? If you're going to make the prison less safe by not having officers screened, why was it? That doesn't sound indispensable to me. Their whole job is to make it safer. And so if it's less safe, that seems to me contrary to your job description. I mean, I'm still troubled by the summary judgment stage here, which the plaintiffs did not concede or did not ask for themselves. Was there evidence or allegations about the rampant problem of contraband in prisons and how much of that contraband is brought in by guards, that is, cigarettes or drugs or pictures or anything else? Was there any evidence of that or was there tendered evidence by the plaintiffs of any of that? They didn't tender that evidence. I would just urge this court to read BUSC closely and carefully. And as I read it, the Supreme Court in that decision doesn't make a distinction between the reasons for the search. And just because this case involves prison guards, that doesn't mean that going through the metal detector is integral and indispensable. Again, the job can be done without it. Think of how did we guard prisons in the days before there were those things? The job got done. And the FLSA doesn't require employers to forego advancements in technology and create compensable time where it doesn't otherwise exist. All right, thank you. Well, even though you gave up seven seconds, you just bought three minutes and 30 seconds. You're not obligated to use it. And we won't check your time clock either. Thank you, Your Honor. I'll just address BUSC. And I'm sorry. Are we going? I will... Are we waiting? Yeah, give him the... Sorry. It was right there in front of you. My apologies. The clock is right there. You can start now. Okay. I think the court correctly understands BUSC. And I will echo my colleague's request to the court to carefully read BUSC. I mean, the issue in BUSC in determining whether a security screening is compensable work is not whether it's safety-related. The issue is whether it's job-related or, more specifically, whether it's tied to the productive work the employees are employed to perform. If it is, it's integral and, in this case, indispensable to these officers' jobs. The test isn't whether, under some conceptual possibility, it might be possible to keep doing the job without the security screening, but whether it could be done just as efficiently and just as effectively without participating in security screening. And, clearly, it could not. The warden did testify that he had seen situations in the past where security guards brought contraband into the prison. If the court needs a record site for that, I'll submit a post-submission brief or a letter brief. But there's at least some indication that this has happened in the past and that security screening – he did testify directly to security screening – is there to exclude contraband and to maintain the safety and security of everybody. Now, in BUSC, if there was somebody that is obligated to ship Amazon products and their job is to actually package and ship those products, correct? Yes. And if they are stealing the products, the Amazon products, they can't very well ship those, right? Sure. I mean, you can draw a connection between what they were doing and the post-shift screening, but what the Supreme Court said is that the job these guys were hired to do was shelve and warehouse and ship these items. And that post-shift screening is not tied to that productive work. Now, what your adversary says, I think, in the brief, is that, well, that's no different than this case, because the detention officers are being paid to check the inmates for contraband, not one another for contraband. There was a connection that Justice Thomas acknowledged in BUSC, and there is a connection here, but the connection wasn't sufficient to make it compensable in BUSC, and so I'm not sure why it would be enough to make it compensable here. I'm not sure Justice Thomas acknowledged that connection the way you and I have conceptually, but here these guys' essential functions as listed in their job description included searching for contraband as well as providing security. And the testimony is that contraband is excluded in order to provide security or a security screening is conducted in order to provide security and in order to provide the safety of everyone in the prison. So it's a much closer relationship than this, well, yeah, if you're stealing then you're not shipping out the goods you're supposed to ship out. The stealing at the end, the, excuse me, that was for the protection of the employer, not to get the job done. That was to keep theft from going out the door. I mean, the job was already done by the end of that day, so I find that case pretty easily distinguishable. I agree. My time has expired. Does the Court have any other questions? Thank you very much. Thank you, both sides, for your fine advocacy. We'll take a ten-minute recess.